376 S.E.2d 569

**STATE of West Virginia**

v.

**John MOSS, Jr.**

**No. 17063.**

Supreme Court of Appeals of
West Virginia.

Dec. 19, 1988.

Frank W. Helvey, Jr., Public Legal Services, for appellant.

Silas B. Taylor, Deputy Atty. Gen., for appellee.

McGRAW, Justice:

The appellant, John Moss, Jr., was convicted by a jury in the Circuit Court of Kanawha County on April 30, 1984, of three counts of first degree murder, without recommendation of mercy, and was sentenced to three consecutive life without mercy sentences. The horrifying facts of this case are substantially set forth in *In the Interest of John Moss, Jr.*, 170 W.Va. 543, 295 S.E.2d 33 (1982), wherein the appellant challenged the circuit court's initial order transferring the appellant from the circuit court's juvenile jurisdiction to its adult jurisdiction. Due to error in the initial transfer proceeding, this Court reversed the circuit court's transfer order and remanded the matter for further proceedings.

After conducting a second transfer hearing, the circuit court entered another order on September 28, 1982, granting the prosecution's motion that the appellant be transferred from juvenile to adult jurisdiction.[1] The grand jury later returned an indictment charging the appellant with three counts of murder in the first degree, and he was tried, convicted, and sentenced as an adult. He now seeks reversal of his convictions based on numerous assignments of error. Those assignments are detailed below, where we conclude that the appellant is entitled to a new trial.

## I.

The trial court erred when it refused the appellant's motion to poll each juror, out of the presence of the others, about each juror's exposure to prejudicial comments made by the prosecuting attorney, which were broadcast by a local radio station on a day that the trial was in recess. The trial court erred when it failed to intervene for the purpose of limiting and correcting fundamentally improper remarks made by the prosecuting attorney during closing, the cumulative effect of which was to deny the appellant his right to a fair trial. The trial court also erred when it allowed admission of evidence regarding the results of a polygraph test taken by a prior suspect to the murders, the husband of the deceased woman and father of the two deceased children. Each of these errors requires reversal of the appellant's convictions.

### A. Prosecutor's Prejudicial Comments Disseminated During Trial

On April 16, 1984, several weeks into the appellant's lengthy trial, the appellant moved for a mistrial based on statements made by the prosecuting attorney during a radio interview broadcast on a day that the court was in recess. The prosecutor's statements included the remark: "No doubt in my mind that he in fact is the murderer of Vanessa Reggettz and her two children." Contemporaneously with his motion for a mistrial, the appellant moved

---

1. In February of 1983 this Court refused to hear the appellant's appeal from the second transfer order and denied the appellant's prayer for a writ of prohibition.

that the trial court poll the jurors about their exposure to the prosecutor's prejudicial remark. The judge denied both of the appellant's motions, stating that he had confidence that the jurors had complied with his admonition to avoid radio, newspaper, and television accounts of the case while the court was in recess.

■ We agree with the appellant that the trial judge committed reversible error when he refused to poll the jurors. In Syllabus Point 3 of *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981), this Court made it clear that "[i]t is improper for a prosecutor in this State to '[a]ssert his personal opinion ... as to the guilt or innocence of the accused....' ABA Code DR7–106(C)(4) *in part.*" This rule is applicable in and out of the courtroom. Standard 8–1.1(a) of the American Bar Association Standards for Criminal Justidce (2d ed. 1980) limits extrajudicial statements by attorneys, specifically providing that: "A lawyer shall not release or authorize the release of information or *opinion* for dissemination by any means of public communication if such dissemination would pose a clear and present danger to the fairness of the trial." (emphasis added). Here, possible prejudice resulted from the prosecuting attorney's extrajudicial statement expressing his personal opinion as to the appellant's guilt.

■ By refusing to poll the jurors the trial court left unanswered the critical question of whether any or all of the jurors were exposed to this inherently prejudicial statement. In Syllabus Point 5 of *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), this Court held that: "If it is determined that publicity disseminated by the media during trial raises serious questions of possible prejudice, the court may on its own motion or *shall* on motion of either

party question each juror, out of the presence of the others, about his exposure to that material." (emphasis added). *See also* Syl.Pt. 2, *State v. Nixon*, 178 W.Va. 338, 359 S.E.2d 566 (1987). Thus, where publicity has been disseminated which raises a serious question of possible prejudice and either party has made a motion to poll the jurors about their exposure to the publicity, a trial court's refusal to undertake such questioning constitutes reversible error.

■ In the case now before us, timely motions were made for a mistrial and to poll the jurors concerning their exposure to the prosecuting attorney's extrajudicial statement. Although corrective measures, such as giving a cautionary instruction, may have justified not declaring a mistrial even if it were determined that the jurors had been exposed to the radio interview, the trial court abused its discretion in refusing to poll the jurors to determine whether a "manifest necessity" existed to discharge the jury and to declare a mistrial. *See* W.Va.Code § 62–3–7 (1984 Replacement Vol.).[2]

**B. Prosecutor's Prejudicial Closing Argument**

■ The trial court also committed reversible error when it failed to intervene for the purpose of limiting and correcting improper remarks made by the prosecuting attorney during closing. Although "[t]his Court recognizes that wide latitude must be given to all counsel in connection with final argument," *State v. Myers*, 159 W.Va. 353, 361, 222 S.E.2d 300, 306 (1976), prosecuting attorneys and trial courts must be mindful of and adhere to the instructive holdings by this Court regarding the bounds of permissible argument. In Syllabus Point 3 of *State v. Boyd*, 160 W.Va.

2. The State wrongly argues that a showing of actual prejudice is required before a defendant is entitled to a poll of the jury. We considered and rejected this practice in *Williams*, noting that "in many instances it would be impossible for a defendant to show actual juror exposure without a direct inquiry of the jurors themselves...." *State v. Williams*, 172 W.Va. at 305 n. 5, 305 S.E.2d at 261 n. 5. Rather, "[m]odern

reasoning indicates that the trial court is obligated to conduct an inquiry if there is any *possibility* of prejudice." *State v. Williams*, 160 W.Va. 19, 24, 230 S.E.2d 742, 746 (1976) (emphasis in original); *cf. State v. Hobbs*, 168 W.Va. 13, 282 S.E.2d 258 (1981) (probable prejudice did not exist since publicity was not inherently prejudicial).

234, 233 S.E.2d 710 (1977), we emphasized the quasi-judicial role of the prosecuting attorney:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

The prosecutor's duty to remain fair and impartial is especially important where the very nature of the crime charged, in this instance murder in the first degree, has a tendency to predispose the jury against the defendant. *Id.* 160 W.Va. at 243, 233 S.E.2d at 717. Likewise, the trial court has a duty to independently protect the accused's right to a fair trial free from improper remarks by the prosecuting attorney:

> We do not say that every improper remark is a proper basis for a mistrial. However, we do not think that an improper remark should be lightly treated by a trial court. If the remark has the potential of prejudicing the defendant, a mistrial should be seriously considered by the court, and at the very least, the court, in the exercise of its discretion, should do everything reasonably possible to obliterate any such prejudicial influence.

*Myers,* 159 W.Va. at 362, 222 S.E.2d at 306; *see also* American Bar Association Standards for Criminal Justice § 3–5.8(e) (2d ed. 1980) ("It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.").

In the present case, the appellant's counsel did not object to the prosecutor's closing statement until after the prosecutor had concluded his remarks. Moreover, when he did object, appellant's counsel did not object to all of the prosecutor's improper remarks. After carefully reviewing the record in this case, however, we need not decide whether the appellant complied with the contemporaneous objection requirement, since we conclude that the prosecutor's statements were egregious enough to cause this Court to invoke the plain error doctrine. Syl.Pt. 4, *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975); W.Va. R.Crim.P. 52(b); *cf. United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987). We find that the prosecuting attorney overstepped the permissible bounds of adversary zeal, and that the trial court erred by not intervening in order to limit and correct the prosecutor's fundamentally improper remarks. The prosecutor expressed his personal opinion as to the credibility of the State's witnesses. Code of Professional Responsibility DR 7–106(C)(4). He characterized the appellant as a "psychopath" with a "diseased criminal mind." Syl.Pt. 3, *State v. Brown,* 104 W.Va. 93, 138 S.E. 664 (1927). He appealed to the passions and prejudices of the jury by imploring that they return verdicts of first degree murder without recommendation of mercy so that the appellant would "never be released to slaughter women and children of Kanawha County." *Critzer,* 167 W.Va. at 661, 280 S.E.2d at 292. He misstated crucial evidentiary matters.[3] And he referred the jury to the fact that the deceased woman's husband took a polygraph, arguing to the jury "that is one reason we know he didn't do it."

We conclude that manifest injustice resulted from the prosecutor's remarks insofar as their cumulative effect denied the appellant his fundamental right to a fair trial and constituted plain error. *See* Syl. Pt. 2, *State v. Hatala,* 176 W.Va. 435, 345 S.E.2d 310 (1986).

## C. Admission of Husband's Polygraph Test Results

██ In Syllabus Point 2 of *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39

---

**3.** For example, the prosecutor stated that the appellant had given five confessions, although the evidence reveals that three confessions were actually given and introduced at trial.

(1979), this Court ruled that "[p]olygraph test results are not admissible in evidence in a criminal trial in this State." Although the trial judge instructed the jury that polygraph test results are not admissible in evidence in a criminal trial, he still allowed error to be committed in this regard on two occasions during the appellant's trial.

As previously noted, the deceased woman's husband became a suspect in the murders soon after they were committed. After he was taken into custody by the police, the same police officers who later interrogated the appellant extracted a confession from the husband, and he was indicted by the grand jury. While the husband was in custody awaiting trial, the same trial judge who presided over the appellant's subsequent trial ruled that the husband's alleged confession was admissible as "voluntarily" given. *In the Interest of John Moss, Jr.,* 170 W.Va. at 546, 295 S.E.2d at 36. The indictment against the husband was dismissed after he passed one of two polygraph tests administered by the police.

The police officer who administered the polygraph tests was called as one of the State's witnesses at the appellant's trial. The prosecuting attorney elicited the officer's testimony that, after administering the second polygraph test to the husband, he believed the husband was "being truthful" and that the prosecution "got the wrong man" when it brought charges against the husband. Moreover, over the appellant's continuing objection, the prosecuting attorney elicited testimony from the attorney who had represented the husband to the effect that, pursuant to an agreement between the prosecuting attorney's office and the husband, the husband voluntarily submitted to the polygraph examinations and was thereafter released from jail and the indictment against him was dismissed.

We find that the introduction of the husband's polygraph test results in this instance was so prejudicial that the trial court's instruction not to consider such evidence was insufficient to cure the error, *cf. State v. Acord,* 175 W.Va. 611, 614, 336 S.E.2d 741, 744 (1985). Here, the trial court committed reversible error by allowing the State, through the introduction of the husband's polygraph test results, to prejudicially vouch for the husband's innocence. We again emphasize that trial courts must strictly adhere to the mandate of Syllabus Point 2 of *State v. Frazier* to not allow polygraph test results to be admitted into evidence in a criminal case.[4]

II.

Because the admissibility of the appellant's three confessions to the triple murders will again be of concern on remand, we now turn our attention to his argument that those confessions should not have been admitted into evidence. The appellant assails the confessions as being inadmissible for three reasons: (1) the appellant was transferred from Ohio to West Virginia pursuant to the Interstate Agreement on Detainers (Detainer Agreement)[5] without a pretransfer hearing or the benefit of counsel; (2) the investigating officers illegally coerced the appellant into waiving his constitutional rights and into making the inculpatory statements; and (3) the investigating officers failed to immediately take the appellant before a referee, circuit judge, or magistrate, in contravention of West Virginia's juvenile prompt presentment requirement. Each of these contentions is examined separately below, where we conclude that the first two confessions given by the appellant are admissible, while the last confession is inadmissible due to the lack of

---

4. Our review of the record does not convince us that the appellant should be precluded from complaining of error in the admission of the polygraph test results by the "invited error" rule stated by this Court in Syllabus Point 2 of *State v. Bowman,* 155 W.Va. 562, 184 S.E.2d 314 (1971).

5. The Detainer Agreement is a compact among 48 states, the District of Columbia and the United States, which provides procedures allowing a jurisdiction to temporarily obtain for trial a prisoner who is incarcerated in another jurisdiction. The Detainer Agreement is codified in Ohio, Ohio Rev.Code Ann. §§ 2963.30 to 2963.45 (Page's 1987), and in West Virginia, W.Va.Code §§ 62–14–1 to 62–14–7 (1984 Replacement Vol.).

prompt presentment to a neutral judicial officer.

### A. Pretransfer Hearing

On September 26, 1980, while the appellant was serving a term of four to twenty-five years at the Ohio State Reformatory for felony convictions in Ohio, the Kanawha County prosecutor's office lodged a detainer and sought custody of the appellant, pursuant to Article IV of the Detainer Agreement.[6] The purpose of the detainer was to obtain a determination by the Circuit Court of Kanawha County of whether the appellant was a delinquent child within the provisions of West Virginia Code § 49-1-4(1) (1986 Replacement Vol.). The delinquency petition and detainer were based on a malicious wounding charge, unrelated to the instant homicides, pending against the appellant in Kanawha County. On October 28, 1980, two officers from the West Virginia Department of Public Safety travelled to Ohio, took the appellant into custody, and returned with him to West Virginia. The appellant was not granted a pretransfer hearing. The appellant subsequently made three inculpatory statements regarding the murders to the West Virginia authorities. One of the statements was tape recorded. All three were admitted into evidence at trial.

■ In *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), the United States Supreme Court held that a prisoner incarcerated in a jurisdiction that has adopted the Uniform Criminal Extradition Act (Extradition Act)[7] is entitled to a hearing before being transferred to another jurisdiction pursuant to Article IV of the Detainer Agreement.[8] Before trial, the appellant moved to suppress the inculpatory statements, arguing *inter alia* that the denial of a pretransfer hearing rendered his detention unlawful, and that the inculpatory statements he gave while unlawfully detained should be excluded from evidence. The trial court rejected this argument and denied the appellant's motion to suppress. In support of this same position on appeal, the appellant argues by analogy that his transfer under the Detainer Agreement without a pretransfer hearing should be equated with an illegal arrest under the Fourth Amendment, thereby vitiating his confessions. Citing Syllabus Point 2 of *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981) and *Wong Sun v. United States*, 371 U.S. 471, 478-88, 83 S.Ct. 407, 412-418, 9 L.Ed.2d 441 (1963), the appellant contends that his detention by West Virginia authorities without a pretransfer hearing is sufficiently analogous to an illegal arrest to cause application of the exclusionary rule. We disagree.

■ While a prisoner denied a pretransfer hearing is entitled to seek habeas relief in the asylum state in order to prevent his transfer without a hearing, *Cavallaro v. Wyrick*, 701 F.2d 1273 (8th Cir.1983), *cert. denied*, 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1372 (1983), a prisoner who has been denied a pretransfer hearing is not

---

**6.** An involuntary transfer under Article IV is initiated when the prosecuting attorney in the state seeking temporary custody sends a written request to the asylum state to have the prisoner made available for prosecution of the charges pending against him.

**7.** The Extradition Act, which has been adopted in 48 states, Puerto Rico, and the Virgin Islands, provides procedures to transfer from one state to another persons against whom criminal charges are pending. While the Detainer Agreement applies only to persons incarcerated, the Extradition Act applies to persons at liberty as well as to persons incarcerated. The Extradition Act is codified in Ohio, Ohio Rev.Code Ann. §§ 2963.01 to 2963.29 (Page's 1987), and in West Virginia, W.Va.Code § 5-1-7 to 5-1-13 (1987 Replacement Vol.).

**8.** A person transferred pursuant to the Extradition Act is explicitly granted a right to a pretransfer "hearing." *Cuyler v. Adams*, 449 U.S. 433, 443, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). Although the Detainer Agreement does not explicitly provide a pretransfer hearing right, *Id.* at 443, 101 S.Ct. at 709, the United States Supreme Court held in *Cuyler* that, as a matter of federal law, the Detainer Agreement and the Extradition Act must be construed together, *Id.* at 445-450, 101 S.Ct. at 710-713, and that a prisoner transferred pursuant to Article IV of the Detainer Agreement is entitled to the pretransfer hearing guaranteed to prisoners under the Extradition Act. *Id.; see* Ohio Rev.Code Ann. § 2963.09.

entitled to have his convictions overturned after notice and a fair trial in the demanding state. *Shack v. Attorney General of the State of Pennsylvania*, 776 F.2d 1170, 1172–74 (3rd Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986); *see Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). In Syllabus Point 4 of *State v. Flint*, 171 W.Va. 676, 301 S.E.2d 765 (1983), where a defendant sought dismissal of the murder charge against him because he had been extradited to West Virginia without benefit of counsel, this Court held that "[o]nce a fugitive has been brought within the jurisdiction of West Virginia as the demanding state, the propriety of the extradition proceedings which occurred in the asylum state may not be challenged. The extradition proceedings may be challenged only in the asylum state." Thus, the general rule denies collateral attacks upon convictions imposed after notice and a fair trial.

The appellant attempts to distinguish between challenging the detainer proceeding itself and challenging the admissibility of evidence obtained after the appellant's transfer without a pretransfer hearing. His argument is founded on the allegation that he was illegally detained. As we have said in prior cases, however, "[w]e are unable to perceive a Fourth Amendment violation where the defendant is already in lawful custody on another unrelated charge." *Grubbs*, 178 W.Va. 811, 814–15 n. 8, 364

S.E.2d 824, 828 n. 8 (citing *State v. Clawson*, 165 W.Va. 588, 600–04, 270 S.E.2d 659, 668–69 (1980)). When the detainer was lodged against the appellant, he was in lawful custody in the Ohio State Reformatory on unrelated Ohio convictions. Thus, his transfer to West Virginia without a pretransfer hearing did not violate his rights under the Fourth Amendment,[9] even though it did deny him the opportunity to test the legality of the detainer lodged against him.[10]

## B. Voluntariness of *Miranda* Waivers and Confessions

The appellant claims that the statements he made while in custody in West Virginia were involuntary under the totality of the circumstances, which he contends included unlawful coercion and prolonged interrogation in an unduly restrictive custodial setting, and that these statements should have been excluded from the evidence at trial. In accordance with the mandatory duty to determine voluntariness set out in Syllabus Point 1 of *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), *overruled in part, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981), the trial court held *in camera* suppression hearings to consider evidence of the voluntariness of the appellant's waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and of the resulting confessions.[11] After considering the testi-

---

9. We note that there are sanctions other than the exclusionary rule for violation of the pretransfer hearing requirement. A prisoner who has been denied a pretransfer hearing has a claim for relief under 42 U.S.C. § 1983 (1982). *Cuyler*, 449 U.S. at 450, 101 S.Ct. at 712–713.

10. In this regard, however, we find it significant that the appellant has not raised at trial or on appeal a challenge to any of the factors which would have been scrutinized had the appellant been taken before a judge in Ohio and given the opportunity to test the legality of the detainer. *See Michigan. v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978); Syl.Pt. 1, *State ex rel. Gonzales v. Wilt*, 163 W.Va. 270, 256 S.E.2d 15, 17 (1979) (citing Syl.Pt. 2, *State ex rel. Mitchell v. Allen*, 155 W.Va. 530, 185 S.E.2d 355 (1971)).

11. The trial court held two *in camera* suppression hearings. One was held prior to trial to consider the admissibility of two oral confessions, one of which was tape recorded, given by the appellant on October 28, 1980, the day that he was returned to the custody of the West Virginia authorities. After individual *voir dire* of the jury had commenced, another supression hearing was held to consider the admissibility of a third oral confession given by the appellant on October 30, 1980, the day that he was transported back to Ohio to await the filing of a second detainer based on the first degree murder charges. The admissibility of this confession was not determined at the first suppression hearing because the prosecuting attorney then handling the case was not made aware of its existence until after *voir dire* had started. Over the appellant's denial that he had made such a

mony at the suppression hearings, the trial court admitted the appellant's inculpatory statements into evidence. We find no error in the trial court's voluntariness determination.

■ Because the appellant was over the age of sixteen years of age when his extrajudicial statements were made to the police, the voluntariness of those statements are tested by the totality of the circumstances under which they were taken. Syl.Pt. 1 and Syl.Pt. 2, *Matter of Mark E.P.*, 175 W.Va. 83, 331 S.E.2d 813 (1985); *see* W.Va. Code § 49–5–1(d).[12] "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl.Pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975). In Syllabus Point 7 of *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971), we emphasized that the prosecution must also demonstrate that the accused has knowingly and intelligently relinquished his *Miranda* rights:

A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made after the accused had been advised of his constitutional right to remain silent and that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and if he can not afford an attorney one will be appointed for him, and that, after he has been so advised, he knowingly and intelligently waives such rights.

statement, the trial court ruled in favor of the admissibility of the appellant's October 30, 1980, oral confession.

**12.** The factors important to determining the voluntariness of a juvenile's confession under the totality of the circumstances are discussed in *State v. Laws*, 162 W.Va. 359, 363, 251 S.E.2d 769, 772 (1978); *see also Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

*See also Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In support of his contention that he did not voluntarily waive his rights, the appellant cites *State v. Mollohan*, 166 W.Va. 60, 272 S.E.2d 454 (1980). The totality of the circumstances in the present case, however, are distinguishable from the circumstances of *Mollohan*. The *Mollohan* confession was taken in its entirety solely within the confines of a patrol car, during a two-day journey from New Hampshire to West Virginia. In *Mollohan*, the accused had a defective level of intelligence and was deeply religious, characteristics which the investigating officers played upon in securing a waiver and confession from the accused. We concluded from the totality of these circumstances that the waiver in *Mollohan* was coerced. *Id.* 166 W.Va. at 64, 272 S.E.2d at 457. The totality of the circumstances in the present case lead us to a different conclusion.

The two officers who took the appellant into custody at the Ohio State Reformatory on October 28, 1980, testified at the pretrial suppression hearing. Trooper Smith testified that on the return trip to Kanawha County, prior to discussing the appellant's involvement in any crimes committed in West Virginia, he advised the appellant of his constitutional rights by reading the standard *Miranda* warnings, and that the appellant acknowledged that he understood his rights. Trooper Smith testified that he then inquired as to whether the appellant would agree to talk about the "serious" crime in West Virginia. The appellant at first suggested that he did not know anything about the crime, but after being asked by Trooper Smith, "Why do you think we took your blood?", the appellant indicated his willingness to talk.[13] Trooper

**13.** In April of 1980 the investigating authorities had obtained a blood sample from the appellant, pursuant to an order by an Ohio court. *In the Interest of John Moss, Jr.*, 170 W.Va. at 546, 295 S.E.2d at 36. This one factor does not convince us to conclude that the waivers and confessions in the present case were coerced, given the preponderance of the evidence to the contrary. *Cf. State v. Mollohan*, 166 W.Va. 60,

Smith testified that he then told the appellant that they should wait until they arrived at the state police detachment in Parkersburg before discussing the matter. Trooper Williams corroborated Trooper Smith's testimony that the appellant was advised of and indicated that he understood his rights prior to the discussion in the police car.

Both troopers testified that the appellant at no time requested a lawyer or conditioned his willingness to talk on the presence of a lawyer, and that the appellant voluntarily signed two separate *Miranda* waiver forms at the Parkersburg state police detachment. The *Miranda* warnings printed on the first form was read to the appellant by Trooper Williams beginning at 6:50 p.m. The appellant affixed his signature to the form in the presence of both troopers at 6:57 p.m.[14] A question and answer interrogation, lasting about two hours, followed, during which the appellant confessed to the murders. At 9:22 p.m. the appellant signed another waiver of rights form in the presence of Trooper Williams and another officer from the Parkersburg detachment. Subsequent to the signing of this waiver of his rights, the appellant made a tape recorded confession, which lasted until about 11:00 p.m.

The appellant was then transported to Kanawha County, where he remained until October 30, 1980, when he was returned to the Ohio State Reformatory by two other members of the Department of Public Safety, Troopers Woodyard and Allen. At a second *in camera* suppression hearing Trooper Allen testified that during the return trip he advised the appellant of his *Miranda* rights; that the appellant indicated he understood those rights; and that the appellant indicated his willingness to talk about the murders without the presence of an attorney. Trooper Woodyard testified that he overheard the exchange between the appellant and Trooper Allen, and vouched for the accuracy of Trooper Allen's testimony. The troopers testified that they questioned the appellant about the murders for about forty-five minutes to an hour, and that the appellant's inculpatory responses included the statement that he wore gloves while at the scene of the murders. The trial court thereupon ruled that a third oral confession had been voluntarily made by the appellant during the return trip to Ohio after a knowing and intelligent waiver of the appellant's constitutional rights.

Upon consideration of the relevant testimony adduced at the suppression hearings, we conclude that, under the totality of the circumstances, there was sufficient evidence to support the trial court's determination that the three confessions now in question were voluntarily made after knowing and intelligent waivers by the appellant of his constitutional rights. The appellant was eighteen years of age when he waived his rights and gave the confessions, and there is no evidence that he had a defective level of intelligence. The evidence also shows that the appellant was given *Miranda* warnings prior to each discussion with the police, and that he signed two written waivers of his rights at the Parkersburg detachment. The officers involved testified that he never requested the presence of an attorney, and they adequately refuted his claims that unlawful coercion was involved in obtaining the confessions.[15]

64, 272 S.E.2d 454, 457 (1980); *State v. Randle*, 179 W.Va. 242, 244, 366 S.E.2d 750, 752 (1988); Syl.Pt. 6, *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988).

14. The waiver of rights forms signed by the appellant indicated that he did not desire the presence of a lawyer prior to talking with the troopers. The waivers also indicated that the appellant was not acting under pressure or coercion.

15. Contrary to his contention on appeal, the first two confessions were not elicited in a police car. The evidence instead shows that after the appellant indicated his willingness to talk about the murders, the troopers delayed questioning until the group arrived at the state police detachment in Parkersburg. Although the third confession was taken while the appellant was in a patrol car, the appellant's challenge to the admissibility of this confession was not that it resulted from unlawful coercion, but that he had in fact never made such a confession. In the alternative, he attacked the admissibility of this confession on the basis of noncompliance with West Virginia's juvenile prompt present-

 Based on all of the foregoing, we find that there was a sufficient showing of voluntariness to support the trial court's rulings. It is well established that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).[16]

## C. Prompt Presentment

The final issue which we address concerns the appellant's contention on appeal that all three of his confessions should be ruled inadmissible because his rights under West Virginia Code § 49–5–8(d) (1986 Replacement Vol.) were violated. This statute directs that a juvenile be taken immediately before a neutral judicial officer upon being taken into custody.[17] In Syllabus Point 3 of *State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985), we addressed the consequences of noncompliance with the provisions of Code § 49–5–8(d):

Under W.Va.Code, 49–5–8(d), when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate. If there is a failure to do so, any confession obtained as a result of the delay will be invalid where it appears that the primary purpose of the delay was to obtain a confession from the juvenile.

 In reaching this decision, we concluded that the juvenile prompt presentment requirement is more stringent than the provision requiring the initial presentment of an adult before a magistrate under West Virginia Code § 62–1–5 (1984 Replacement Vol.); *see* W.Va.R.Crim.P. 5(a). Unlike a violation of the adult prompt presentment requirement, which is analyzed for admissibility as part of the totality of the circumstances making a confession involuntary and hence inadmissible, Syl.Pt. 6, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), *as amended*, Syl.Pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), noncompliance with the juvenile prompt presentment requirement results in inadmissibility if the violation occurred for the primary purpose of obtaining a confession from the juvenile, *Ellsworth J.R.*, 175 W.Va. at 70, 331 S.E.2d at 508, and may operate to exclude confessions even where *Miranda* rights have

---

ment law. *See infra* text accompanying notes 17–21.

**16.** In his petition for appeal, the appellant argued that his Sixth Amendment right to counsel had attached because his name appeared in the indictment returned on April 29, 1980, against the deceased woman's husband. The assignment of error on this point was not argued in the appellant's brief on appeal and may be deemed by this Court to be waived. "Assignments of error that are not argued in the brief on appeal may be deemed by this Court to be waived." Syl.Pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981). Assuming *arguendo* that the appellant's Sixth Amendment right to counsel had attached on the murder charges before he was taken into custody by the West Virginia troopers, we are aware that the United States Supreme Court held during its most recent term that a knowing and intelligent *Miranda* waiver will also waive the Sixth Amendment right to counsel after it has attached. *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (U.S.1988). Thus, even if the appellant's Sixth Amendment right to counsel had attached prior to his custodial interrogation, the weight of the evidence shows that the appellant's waiver of his rights, including his Sixth Amendment right to counsel, was knowing and intelligent, without an assertion by him of his right to counsel. The holding in *Patterson* does not change the rule that, where an accused has requested the assistance of counsel, a subsequent waiver of his Sixth Amendment right to counsel for purposes of a police-initiated interrogation would be invalid. *Id.* at 293 n. 5, 108 S.Ct. at 2395–2396 n. 5 (citing *Michigan v. Jackson*, 475 U.S. 625, 631–35, 106 S.Ct. 1404, 1408–1410, 89 L.Ed.2d 631 (1986)); *see also* Syl. Pt. 1, *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987); *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987).

**17.** West Virginia Code § 49–5–8(d) (1986 Replacement Vol.) provides, in relevant part, that:

A child in custody must immediately be taken before a referee or judge of the circuit court and in no event shall a delay exceed the next succeeding judicial day: Provided, That if there be no judge or referee then available in the county, then such child shall be taken immediately before any magistrate in the county for the sole purpose of holding a detention hearing. The judge, referee or magistrate shall inform the child of his right to remain silent, that any statement may be used against him and of his right to counsel, and no interrogation shall be made without the presence of a parent or counsel.

been given and waived. *Guthrie*, 173 W.Va. at 292, 315 S.E.2d at 399. Thus, compliance with the juvenile prompt presentment requirement is examined separately from the determination of voluntariness.

Like the rule stated in Syllabus Point 6 of *Persinger*, however, the exclusionary rule established in Syllabus Point 3 of *Ellsworth J.R.* "is not to be applied retroactively to a confession which was obtained prior to the date of that decision *where no prompt presentment objection was made at trial.*" Syl.Pt. 4, *in part*, *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985) (emphasis added); *see also* Syl.Pt. 3, *State v. Gangwer*, 168 W.Va. 190, 283 S.E.2d 839 (1981).[18] In the present case, it is uncontroverted that the appellant was not presented to a referee, circuit judge, or magistrate, even after he had given three confessions to the murders.[19] The three confessions were obtained prior to our holding in *Ellsworth J.R.*, however, and our review of the record reveals that a prompt presentment objection was preserved before the trial court only with respect to the third confession. Since the issue was not preserved on the first two confessions, the decision in *Ellsworth J.R.* will not be applied retroactively to exclude those confessions, but will only be applied retroactively to exclude the third confession obtained from the appellant on October 30, 1980.[20] Accordingly, the appellant's third confession is hereby declared invalid and inadmissible.[21]

### III.

For the reasons given above, the appellant's convictions are hereby reversed, and this case is remanded for a new trial consistent with this opinion.

REVERSED AND REMANDED.

---

**18.** We pointed out in *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985), that our decision in *Persinger* "was not fashioned as a constitutional mandate that affected the heart of the truthfinding function." *Hickman*, 175 W.Va. at 720, 338 S.E.2d at 198. The same is true of the exclusionary rule announced by our decision in *Ellsworth J.R.* for violation of the juvenile prompt presentment requirement.

**19.** The record does disclose that, after a second detainer was lodged against the appellant on the murder charges, he was returned to West Virginia on December 18, 1980. He was subsequently presented to a magistrate at a preliminary hearing held on January 12, 1981. *In the Interest of John Moss, Jr.*, 170 W.Va. at 547, 295 S.E.2d at 37.

**20.** We reject the State's contention that the provisions of Code § 49–5–8(d) should not apply to persons in custody pursuant to an interstate detainer. As we said in Syllabus Point 2 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984): "West Virginia officers may not avoid our state rules about prompt presentment of arrestees and admissibility of confessions when they cross our borders to apprehend a fugitive suspect."

**21.** Because we are reversing the appellant's convictions on other grounds, we need not decide whether the admission of this testimony, in violation of the prompt presentment requirement, was harmless error, irrespective of the propriety of its admission. *See* Syl.Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979).