**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-7354

JOHN MOSS, III,

Petitioner - Appellant,

v.

DAVID BALLARD, Warden,

Respondent - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.   Joseph R. Goodwin, Chief District Judge.  (2:09-cv-01406)

Argued:  May 14, 2013                    Decided:  August 2, 2013

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, and WYNN and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.   Judge Wynn wrote the opinion, in which Associate Justice O'Connor and Judge Diaz concurred.

**ARGUED**: Stuart McCommas, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant.   Robert David Goldberg, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.  **ON BRIEF**:  Neal L. Walters, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Petitioner John Moss, III confessed three times to murdering a mother and her two children in West Virginia. Despite Moss's attempts to suppress those confessions as involuntary, the state trial court admitted them at trial, and a jury convicted Moss of three counts of first-degree murder. On appeal, the Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court") reversed the convictions based on multiple errors at trial. Of particular import to the appeal before us, the West Virginia Supreme Court concluded that although all of the confessions were obtained in violation of West Virginia's juvenile prompt presentment statute, only the third confession had been improperly admitted because it was the only confession that Moss's counsel had objected to on that basis. Thereafter, Moss was retried and again convicted of three counts of first-degree murder.

After the denial of several state habeas petitions, Moss filed a federal habeas petition. The district court dismissed Moss's petition, declining to address whether counsel in his first trial was ineffective and rejecting his argument that his confessions were involuntary. This Court granted Moss's request for a certificate of appealability to determine "(1) whether Moss'[s] first trial counsel was ineffective in failing to object to the admission of his [first two] confessions on the

3

ground that they were taken in violation of West Virginia's juvenile presentment law," and "(2) whether the district court satisfied the independent analysis requirement in Miller v. Fenton, 474 U.S. 104 (1985), for determining the voluntariness of Moss'[s] confession." Upon review of these issues on appeal, we affirm the district court's dismissal of Moss's habeas petition.

I.

In 1980, Moss confessed to murdering a mother and her two children in West Virginia in 1979. Specifically, on October 28, 1980, as two West Virginia State Troopers transported Moss from an Ohio detention center to West Virginia, Moss indicated that he would discuss the murders. The troopers then brought Moss to a West Virginia police detachment center where Moss signed a Miranda waiver and orally confessed to the murders. Later the same night, Moss signed a second Miranda waiver and gave a tape-recorded confession. And, while being driven back to Ohio on October 30, 1980, Moss confessed to the murders a third time. Moss was seventeen years old at the time of the murders and eighteen years old when he confessed.[1] Following his

---

[1] See W. Va. Code § 49-5-1(a) (1978) (a defendant nineteen or under charged with committing an offense while under eighteen must be remanded to the trial court's juvenile jurisdiction).

4

confessions, Moss was charged with three counts of first-degree murder.

Before trial, Moss moved to suppress his confessions. Moss initially challenged only his first two confessions, arguing in part that they were involuntary because the officers coerced him and disregarded his request for an attorney. After a suppression hearing, the court rejected Moss's arguments, denied his motion to suppress, and admitted the first two confessions. Later, Moss also moved to suppress his third confession. At that hearing, Moss's counsel again argued that the confession was involuntary, but additionally argued that Moss was not taken before a neutral judicial officer in violation of West Virginia's juvenile prompt presentment statute. That statute required that a juvenile be immediately taken before a neutral judicial officer when taken into custody. W. Va. Code § 49-5-8(d) (1978). Despite this additional argument, the court also admitted Moss's October 30 confession.

In April 1984, a jury convicted Moss of three counts of first-degree murder, and the court sentenced him to three consecutive terms of life imprisonment without mercy.

One year after Moss's trial, the West Virginia Supreme Court ruled that any confession obtained in violation of West Virginia's juvenile prompt presentment statute must be excluded from evidence if it appeared that the primary purpose of the

5

presentment delay was to obtain a confession from the juvenile. State v. Ellsworth, 331 S.E.2d 503, 508 (W. Va. 1985). Three years after that, the West Virginia Supreme Court reversed Moss's convictions on appeal and remanded for a new trial because of multiple trial errors, including failure to poll the jury, improper prosecutorial remarks, and improper admission of evidence. State v. Moss, 376 S.E.2d 569, 572 (W. Va. 1988). The court further held that although Moss's confessions were voluntary, see id. at 577-80, they were taken in violation of West Virginia's juvenile prompt presentment statute because he was never presented to a neutral judicial officer, id. at 581. But because the court held that Ellsworth's exclusionary rule did not apply retroactively unless a presentment objection was made at trial, it determined that only Moss's third confession was inadmissible. Id.

Before Moss's second trial, the trial court conducted a suppression hearing regarding the admissibility of Moss's first two confessions. The court admitted the confessions for two independent reasons: (1) it believed that the West Virginia Supreme Court's ruling that the October 28 confessions were admissible was the "law of the case"; and (2) irrespective of that ruling, it determined that the confessions did not violate West Virginia's juvenile prompt presentment statute. Supp. Appendix 1-3.

6

Following his second trial, the jury again convicted Moss of three counts of first-degree murder, and the court again sentenced him to three sentences of life imprisonment without mercy. The West Virginia Supreme Court subsequently denied his petition for appeal.

Between 1994 and 2007, Moss filed four habeas petitions in West Virginia circuit courts. The courts denied each petition, rejecting Moss's challenges to the voluntariness of his confessions and his arguments that counsel in his first trial was ineffective in failing to raise a prompt presentment objection to his first two confessions. Further, the West Virginia Supreme Court denied Moss's habeas petition filed in that court.

In 2009, Moss filed a federal habeas petition, arguing in part that counsel in his first trial was ineffective in failing to object to the first two confessions on presentment grounds and that his confessions were involuntary. The state moved for summary judgment. The magistrate judge recommended granting the state's motion and dismissing the habeas petition, and the district court adopted that recommendation. Specifically, the district court concluded that it was "not charged with reviewing the conduct of the petitioner's counsel at his first trial, where his convictions were ultimately vacated." J.A. 2957. Further, it concluded that Moss did not sufficiently show that

7

the state courts' factual determinations regarding the voluntariness of his confessions "were incorrect or unreasonable" or "that the state courts' decisions concerning the voluntariness of his confessions were contrary to, or an unreasonable application of, clearly established federal law." J.A. 2945.

Moss appealed and asked this Court for a certificate of appealability. We, in turn, allowed Moss to present these issues: (1) whether Moss's counsel at his first trial was ineffective in failing to object to the admission of his first two confessions on the ground that they were taken in violation of West Virginia's juvenile presentment law, and (2) whether the district court independently determined the voluntariness of Moss's confession as required by Miller v. Fenton, 474 U.S. 104 (1985).

## II.

### A.

As an initial matter, while the parties agree that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Moss's habeas petition, see 28 U.S.C. § 2254, they dispute the proper standard of review for his ineffective assistance of counsel claim. Under AEDPA, federal courts cannot grant a state prisoner's habeas petition for any claim the state

8

court adjudicated on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Moss contends that the state court did not adjudicate the merits of his ineffective assistance of counsel claim. Accordingly, he argues that we should not apply AEDPA deference, but must instead review his claim de novo. See Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999) (reviewing de novo "[w]hen a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits"). The state, by contrast, asserts that both the state habeas court and the West Virginia Supreme Court adjudicated the merits of Moss's ineffective assistance of counsel claim, thereby triggering AEDPA's deferential standard of review.[2]

We find it unnecessary to resolve this issue. Even assuming arguendo that de novo review is appropriate, we

---

[2] The state also argues that Moss waived appellate review of the proper standard because he did not seek de novo review before the district court. But "the correct standard of review under AEDPA is not waivable." Gardner v. Galetka, 568 F.3d 862, 879 (10th Cir. 2009); see also Brown v. Smith, 551 F.3d 424, 428 n.2 (6th Cir. 2008); Eze v. Senkowski, 321 F.3d 110, 120–21 (2d Cir. 2003).

nevertheless conclude that Moss has failed to demonstrate that his counsel was ineffective.

B.

To establish ineffective assistance of counsel, Moss must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him, meaning that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Turning to Strickland's first prong, Moss argues that because the juvenile prompt presentment statute was well-settled at the time of his first trial, his attorney performed deficiently by failing to object to Moss's first two confessions on that basis. Conversely, the state asserts that counsel cannot be deemed ineffective for failing to anticipate Ellsworth's exclusionary rule. We must agree with the state.

It is well established that an attorney cannot be labeled ineffective for failing to anticipate a future change in the law. See United States v. McNamara, 74 F.3d 514, 516-17 (4th Cir. 1996); Honeycutt v. Mahoney, 698 F.2d 213, 217 (4th Cir. 1983).

10

Although Moss correctly notes that West Virginia's juvenile prompt presentment statute existed at the time of his first trial, Ellsworth was not decided until one year after Moss's first trial. Ellsworth held that confessions obtained in violation of the juvenile prompt presentment statute are inadmissible if the primary purpose of the presentment delay was to obtain a confession. Ellsworth, 331 S.E.2d at 508. In short, failure to comply with the juvenile prompt presentment statute did not alone render a confession inadmissible at the time of Moss's first trial. Moss, 376 S.E.2d at 580. Rather, prompt presentment was analyzed as one part of the voluntariness inquiry. Id.; cf. State v. Guthrie, 315 S.E.2d 397, 399 (W. Va. 1984) (stating that for purposes of West Virginia's adult prompt presentment statute, "[t]he delay in taking a defendant to a magistrate may be a critical factor in the totality of circumstances making a confession involuntary and hence inadmissible") (quotation marks and citation omitted). Only after Ellsworth did West Virginia courts analyze compliance with the juvenile prompt presentment statute separately from the voluntariness inquiry. Moss, 376 S.E.2d at 581. Further, the West Virginia Supreme Court later clarified that Ellsworth's exclusionary rule "is not to be applied retroactively to a confession which was obtained prior to the date of that decision

11

where no prompt presentment objection was made at trial." Id. (citations and quotation marks omitted) (emphasis omitted).

Here, although Moss's counsel at his first trial did not object to Moss's first two confessions on prompt presentment grounds, he argued that they were involuntary for several other reasons. While Moss's counsel should have been aware of the juvenile prompt presentment requirement, he cannot be deemed ineffective for failing to anticipate that the statute would later become an independent basis to exclude a confession and that he needed to specifically object on presentment grounds to preserve that issue. See Honeycutt, 698 F.2d at 217. Accordingly, Moss cannot show that his counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Therefore, Moss's ineffective assistance of counsel claim must fail.

C.

Finally, Moss contends that the district court failed to independently determine whether his confession was voluntary as required by Miller v. Fenton, 474 U.S. 104 (1985).

In Miller, the Supreme Court held that in the federal habeas context, whether a confession was voluntary is a legal question requiring "independent federal determination." Id. at 112. While Miller predated the enactment of AEDPA, courts have

12

incorporated Miller's independent determination requirement into AEDPA's deferential standard of review. Thus, federal habeas courts must independently apply federal law to ultimately determine whether the state court's voluntariness determination was contrary to, or an unreasonable application of, that law. See Williams v. Taylor, 529 U.S. 362, 402-04, 412-13 (2000); Land v. Allen, 573 F.3d 1211, 1217 (11th Cir. 2009); Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002).

In his habeas petition, Moss challenged the state courts' findings that his October 28 confessions were voluntary as an unreasonable applicable of clearly established federal law. Accordingly, the district court reviewed the conflicting testimony from Moss and the officers who took his confessions and the state courts' ultimate decision to believe the officers. Applying AEDPA deference, the district court concluded that "[t]he Petitioner has not demonstrated, by clear and convincing evidence, that the state courts' factual determinations were incorrect or unreasonable. Moreover, the petitioner has not demonstrated that the state courts' decisions concerning the voluntariness of his confessions were contrary to, or an unreasonable application of, clearly established federal law." J.A. 2945.

Moss argues that because the district court did not "mention[] and explain[] the applicable federal law," Reply Br.

13

at 19, it failed to conduct the independent review required by Miller. But Moss does not cite, nor did we find, a case holding that post-AEDPA, Miller requires courts to specifically identify or explain the applicable federal law. Rather, Section 2254(d)(1) merely requires a federal habeas court to independently determine whether a state court's adjudication on the merits resulted in a decision that "was contrary to clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 412 (quotation marks and citation omitted). This, the district court has done. Accordingly, we reject Moss's voluntariness challenge.

## III.

For the foregoing reasons, we affirm the district court's order dismissing Moss's habeas petition.

AFFIRMED