409 S.E.2d 490

**STATE of West Virginia**

v.

**Henry Clay MOORE.**

**No. 19127.**

Supreme Court of Appeals of
West Virginia.

July 16, 1990.

Dissenting Opinion of Justice Workman
Aug. 2, 1991.

**24**

Jane Moran, Williamson, for Henry Clay Moore.

Roger W. Tompkins, Atty. Gen., Richard M. Riffe, Sr. Asst. Atty. Gen., Atty. General's Office, Charleston, for State.

1. We follow our past practice in juvenile and domestic relations cases, and do not use the last names of these juvenile witnesses. *See generally In the Matter of Jonathan P.,* 182 W.Va. 302, 303

PER CURIAM:

The appellant, Henry Clay Moore, appeals his conviction by a jury in the Circuit Court of Mingo County of two felony counts of delivery of a controlled substance and of one misdemeanor count of possession of a controlled substance. The sole issue we address in this appeal is whether the trial court erred in allowing the prior inconsistent statements of certain witnesses to be used as substantive evidence. Considering the prejudicial effect of the use of these statements as substantive evidence, and of the prosecutor's comments during closing argument concerning the veracity of the witnesses who made those statements, we find that this case should be reversed and remanded for a new trial.

Briefly, the facts relevant to this issue are as follows. On December 14, 1987, fifteen-year-old Steven P.[1] arrived at his home after 8:30 p.m. in an intoxicated state. Later that night, his father, a West Virginia state policeman, contacted Trooper John H. Zirkle to inform him that his son had become intoxicated at the home of the appellant, Henry Clay Moore. Trooper Zirkle began investigating the matter and obtained written statements from Steven P. and four other boys, who stated that they had been at Mr. Moore's house the night of December 14, 1987, drinking beer, and that two of the youths had smoked marihuana with Mr. Moore. Trooper Zirkle obtained a search warrant and conducted a search of Mr. Moore's residence on the night of December 19, 1987. During the search, 7.52 grams of marihuana were seized. Subsequent to the search, warrants were issued for Mr. Moore's arrest for five charges of contributing to the delinquency of minors by providing them with alcohol, two charges of delivery of a controlled substance to juveniles, and one charge of possession of a controlled substance.

At trial, however, three of the five boys

n. 1, 387 S.E.2d 537, 538 n. 1 (1989); *Shelby J.S. v. George L.H.,* 181 W.Va. 154, 155 n. 1, 381 S.E.2d 269, 270 n. 1 (1989).

recanted their earlier statements.[2] One juvenile stated that he could not recall certain facts which were contained in his written statement. Steven P. was the only youth who testified consistent with the earlier statement he had given Trooper Zirkle. The State introduced the written statements of those three youths into evidence, and these statements were treated as substantive evidence and referred to as such by the prosecuting attorney in his closing argument.

At the conclusion of all the evidence, the jury returned a verdict, after deliberating for approximately fifteen hours, finding the appellant guilty of two counts of delivery and one count of possession. The trial court sentenced him for a term of not less than two years nor more than ten years for his conviction on count one, and fined him $15,000. In connection with his conviction on count two, the trial court also sentenced him for a term of not less than two nor more than ten years and fined him $15,000. The sentences imposed under count one and count two were ordered by the trial court to run consecutively. The trial court further enhanced these sentences by imposing the penalties under *W.Va.Code*, 60A–4–406 [1971],[3] which resulted in a cumulative sentence of four to twenty years. He was also sentenced to six months in the Mingo County jail for his conviction for possession of marihuana, which was to be served concurrently with his felony sentence on count one.

Although the appellant has raised numerous assignments of error, the sole issue we shall address in this appeal is whether the trial court erred in allowing the prior inconsistent statements of certain witnesses to be used as substantive evidence. Prior to the adoption of the *West Virginia Rules of Evidence*, this Court first addressed the use of prior out-of-court statements in *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975). We explained the limited use of prior inconsistent statements in syllabus point 1 of *Spadafore:*

> In a criminal case prior out-of-court statements made by a witness cannot be admitted into evidence for the truth of the matter asserted unless they were made under oath in a judicial atmosphere during the taking of a deposition or at a former trial and were subject at that time to cross-examination by the opposing party's counsel.

More recently, in *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990), we discussed at great length the use of prior inconsistent statements under Rule 801(d)(1)(A) of the *West Virginia Rules of Evidence.*[4]

In syllabus point 1 of *Collins*, we recognized:

> Under Rule 801(d)(1)(A) of the West Virginia Rules of Evidence, a witness's prior inconsistent statement is not hearsay and may be used as substantive evidence if it meets certain prerequisites. First, the statement must have been given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. Second, the

---

2. Erkles Perkins, a witness presented by the appellant, also testified inconsistently with the prior out-of-court statement he gave the state trooper.

3. *W.Va.Code*, 60A–4–406 [1971] provides, in relevant part: "Any person eighteen years of age or over who violates section 401(a) by distributing any controlled substance listed in Schedules I, II, III, IV, and V to a person under eighteen years of age who is at least three years his junior is punishable by the fine authorized by section 401(a)(1)(ii), (iii), or (iv) [§ 60A–4–401(a)(ii), (iii), or (iv) by a term of imprisonment up to twice that authorized by section 401(a)(1)(ii), (iii), or (iv), or both."

This section, however, has been rewritten by an amendment in 1989. *See W.Va.Code*, 60A–4–406 (Supp.1989).

4. Rule 801(d)(1)(A) provides:
The following definitions apply under this article:
. . . .
(d) *Statements Which are not Hearsay.*—A statement is not hearsay if—
(1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]

statement must be inconsistent with the witness's testimony at trial, and the witness must be subject to cross-examination.[5]

Furthermore, this Court observed that the "trial court has a duty to analyze the reason why a party wants to impeach its own witness[,]" and directed that courts should use the balancing test in Rule 403 of the Rules of Evidence to determine whether impeachment evidence should be barred. *Id.* 186 W.Va. at 8–9, 409 S.E.2d at pp. 188–89. We stated in syllabus point 5 of *Collins:* "The balancing test in Rule 403 of the West Virginia Rules of Evidence should be used to determine whether impeachment evidence should be barred because its prejudicial effect outweighs its impeachment value."

■ Finally, in *Collins,* this Court addressed the issue of whether the use of the prior inconsistent statements as substantive evidence rather than impeachment material, and the failure to give a cautionary instruction limiting the use of those statements is so prejudicial as to affect the substantial rights of the defendant under the plain error doctrine. *State v. Collins,* 186 W.Va. 1, 409 S.E.2d 181, 190–91 (1990). We explained the application of the plain error doctrine in syllabus point 6 of *Collins:*

> 'The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly

and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.' Syllabus Point 4, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988).

■ In the case now before us, the boys' statements were not taken "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Each of the statements was taken by a state trooper in the boy's home, in the presence of either the boy's parent or guardian. Each boy and his parent or guardian signed the statement. Clearly, these statements were not taken under any procedure specified in Rule 801(d)(1)(A), and therefore these statements could only be used for impeachment purposes.[6]

Next, we must consider whether the use of the boys' prior out-of-court statements as substantive evidence was so damaging that the appellant's right to a fair trial was substantially affected and constituted "plain error" under *W.Va.R.Crim.P.* 52(b).[7]

From the record before us, we find that of the five boys who testified, Steven P. was the only one who testified that he had smoked the appellant's marihuana with him the evening of December 14, 1987. Bill C., the other boy who allegedly smoked marihuana with Steven P. and the appellant, testified that the appellant had not given him any marihuana. Two other boys who were in the appellant's home that evening, Michael S. and Jamie H., also denied that the appellant had provided marihuana to Steven P. and Bill C. The fifth boy, Orville R., testified that he could not recall wheth-

---

5. In *Collins,* we also addressed the use of prior inconsistent statements for impeachment purposes under *W.Va.R.Evid.* 607. We stated in syllabus points 3 and 4 of *Collins:*

> 3. Rule 607 of the West Virginia Rules of Evidence allows a party, including the one who called the witness, to impeach a witness by a prior inconsistent statement.
> 4. Rule 607 of the West Virginia Rules of Evidence does not free either party to introduce otherwise inadmissible evidence into trial under the guise of impeachment.

6. Although the boys had previously been questioned and cross-examined at the magistrate hearing in February, 1988, concerning their statements that the appellant had given them alcohol, that proceeding was limited to the misdemeanor charges of contributing to the delinquency of minors and no questions were asked concerning the delivery or possession of marihuana.

7. Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

er the appellant had given them a marihuana cigarette.[8] Thus, without the prior inconsistent statements, the only substantive evidence that the state had to establish the delivery to Steven P. and Bill C. was the testimony of Steven P.[9] There is no question that allowing the boys' prior statements that the appellant had delivered marihuana to Steven P. and Bill C. to be used as substantive evidence was damaging to the appellant's case.

Moreover, there were other events at trial which enhanced the prejudicial effect of the use of these statements as substantive evidence. First, the trial court had just taken a short recess before Jamie H., the third boy to recant his prior statement, was called to the stand. When Jamie H. took the stand and began to recant the earlier statement he had made to the state trooper, the trial judge abruptly directed the bailiff to send the jury to its room, and questioned the boys and their parents on the record. The trial judge questioned each of the boys at great length concerning the possible reasons why the boys' testimony was inconsistent. The trial judge also threatened the boys by stating that "the juvenile authorities are going to investigate this and a grand jury is going to look at this." Then, the jury was brought back into the courtroom and the judge gave no explanation to the jury for abruptly sending them out of the courtroom during Jamie H.'s testimony, nor did he give the jury any limiting instruction concerning the use of prior inconsistent statements for impeachment purposes.[10]

Furthermore, the State made certain statements in the closing argument which were also prejudicial to the appellant.[11] Not only were the juveniles' prior inconsistent statements characterized as the "best evidence" [12] by the prosecutor in his closing argument, but he also stated that "I think it is pretty clear they came in here and lied to you today." He also commented that Erkles Perkins' testimony, which was also inconsistent with an earlier statement he made to the state trooper, was "another lie and another series of lies to help Henry Clay Moore out." [13]

We recognized in syllabus point 1 of *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981):

'The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.' Syl. Pt. 3, *State*

---

8. Orville R. testified, however, that he remembered giving the statement to the state trooper.

9. The appellant's counsel, at the close of the State's case, moved for a directed verdict on the charge of delivery of marihuana to Bill C. since Bill C. denied there had been a delivery to him and Steven P. was the only witness who testified concerning the delivery. Counsel on behalf of the appellant argued at trial that if the boys' prior statements had not been used as substantive evidence, then there was an "overwhelming amount of evidence that contradicts Steven [P.'s] testimony."

10. The appellant's counsel failed to request that the trial court give the jury a cautionary instruction. For a discussion of cases regarding the use of a cautionary instruction, see *State v. Collins*, 186 W.Va. at 9–10, 409 S.E.2d at 189–90 (1990).

11. We note that the prosecuting attorney was advised by the boys prior to trial that they intended to recant their earlier statements.

12. In *Collins*, 186 W.Va. at 11, 409 S.E.2d at 191 (1990), we observed that when the prosecutor refers to the prior inconsistent statements as substantive evidence in the closing argument rather than impeachment material, "this practice compounds the impeachment error." [citations omitted].

13. The appellant did not raise this in the assignments of error. We stated, however, in syllabus point 4 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975): "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

v. *Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

*See also* syllabus point 3, *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988).

■ We further stated in syllabus point 3 of *Critzer*:

It is improper for a prosecutor in this state to '[A]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....' ABA Code DR7–106(C)(4), in part.

*See also* syllabus point 8 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988); syl. pt. 1, *State v. Moss, supra.* Furthermore, in *England*, we noted that "[m]ost cases reversed due to prosecutorial comment on credibility involve either categorical assertions that a witness is lying or intimations of the prosecutor's personal belief or disbelief of particular witnesses." (citations omitted). 180 W.Va. at 351 n. 13, 376 S.E.2d at 557 n. 13.

Thus, considering the abrupt manner in which the trial court excused the jury when the third juvenile recanted his testimony, the prosecutor's characterization and use of the prior inconsistent statements as substantive evidence, and the prosecutor's comments concerning his personal belief that the juveniles and Mr. Perkins were lying, it is clear that the cumulative effect of these three factors denied the appellant his constitutional right to a fair trial and constituted plain error.[14]

14. Other areas we find troublesome are found in the transcript. For example, the judge first interrupted the jury's deliberations and asked the following questions:

THE COURT: Have you reached a verdict on more than one count?

FOREMAN KESSLER: No.

THE COURT: I'm going to ask you two questions and the first question I'm going to ask is have you reached a verdict on more than one count?

FOREMAN KESSLER: No.

THE COURT: I'm going to ask you two questions, and the first question I'm going to ask is if you think there is any chance you could reach a verdict on either of the other two counts if you continued to deliberate further, and I would like for you to answer that question with a yes or no.

FOREMAN KESSLER: I have to say yes or no?

THE COURT: Yes. I would like you to answer yes or no.

FOREMAN KESSLER: No.

THE COURT: So, you are telling me you can't answer yes or no when I ask that question?

FOREMAN KESSLER: Yes.

THE COURT: I'm going to ask you for some raw numbers, and I do not want you to tell me how you are split. When you answer this question, you should say two numbers and nothing more. You should say 8–4, 6–6, 2–10, 1–11, just two numbers. Can you tell me how you are split on Count One, just the numbers?

FOREMAN KESSLER: 3–9.

THE COURT: Can you tell me how you are split on Count Two?

FOREMAN KESSLER: 3–9.

THE COURT: I take it you have reached a verdict on count three?

FOREMAN KESSLER: Yes, sir.

THE COURT: We will be back with you momentarily.

The court then returned and asked the following questions:

THE COURT: Madam Foreman, can you tell me if there has been any movement one way or another in your numbers in the last hour?

FOREMAN KESSLER: Yes, sir.

THE COURT: Fine. You may continue your deliberations.

Less than an hour later, the judge inquired again whether the jury had reached a verdict:

THE COURT: Ladies and gentlemen, we have heard nothing from you. It is now midnight and we want to make an inquiry of you. Madam Foreman, please answer yes or no to the following question: Has there been any change in the numbers you reported to me earlier?

FOREMAN KESSLER: No.

THE COURT: Do you think that further deliberations would result in a change of those numbers?

FOREMAN KESSLER: Tonight?

THE COURT: Let me ask you this, do you think if we let you go home tonight and come back in the morning to resume deliberations here in the morning that it might be more positive?

FOREMAN KESSLER: Yes.

THE COURT: You think that might be a possibility if we came back in the morning.

FOREMAN KESSLER: Yes.

THE COURT: All right. We'll bring you out in a few minutes.

Then, the next day, the judge interrupted the jury's deliberations again, and asked the following questions:

[THE COURT:] The bailiff came to me just now and said there was a knock on the jury room door and someone indicated to him that you had reached what you think is an im-

Thus, for the reasons set forth herein, the judgment of the Circuit Court of Mingo County is reversed, and this case is remanded for a new trial.[15]

Reversed and remanded.

WORKMAN, Justice, dissenting:

Once again, the majority of this Court concludes that prior inconsistent statements were treated as substantive evidence, when in fact a reading of the record reflects the prior statements were used as good old-fashioned impeachment.

The majority opinion goes one step further to find that, absent the prior inconsistent statements, there was no direct evidence, except the testimony of Steven P., to support the two convictions of delivery to Steven P. and Bill C. A reading of the record does not support this conclusion either.

The majority opinion is reminiscent of the old story about the lawyer who said "I'll work for any hourly rate, no matter how low, as long as I can keep the hours."

Like the lawyer who was willing to be creative in his timekeeping, any legal writer can write a convincing opinion *if* he can take broad poetic license in establishing the basic premises upon which to build.

The casual reader of the majority opinion will certainly find that it appears well-reasoned and convincing; and one may accept it as such *if* one accepts these broad statements upon which it is premised:

The state introduced the written statements of ... three youths into evidence, and these statements were treated as substantive evidence ...

\* \* \* \* \* \*

... without the prior inconsistent statements, the only substantive evidence that the state had to establish the delivery to Steven P. and Bill C. was the testimony of Steven P.

The problem with the majority opinion is that these conclusory statements upon which all that follows is based are made without any discernible review of the record.

A review of the record will in fact reflect clearly that the prior statements were used as impeachment, and that there was indeed other substantive direct evidence which support the jury's convictions.

## USE OF INCONSISTENT PRIOR STATEMENTS

As to the issue of the use of prior inconsistent statements, this dissent is based primarily on the same reasoning enunciated in the dissent to *State v. Collins*, 186 W.Va. 1, 15, 409 S.E.2d 181, 195 (1990).

It is also important to note that during the in camera hearing on defendant's motion for directed verdict, the lower court stated the following with regard to the reason the prior statements were admitted:

Those written statements can be used to *impeach*, and effectively impeach, but whether or not they are substantive evidence standing alone that would warrant a conviction when the witness is saying something entirely different I have grave

---

passe. I think he said somebody said the words "we are hung[.]"

Madam Foreman, let me inquire of you, please, and I would ask you to listen to me carefully. I want you to answer me with simply and only two numbers and don't say anything more. Can you tell me, please, and let me ask the whole question first. The numbers I am about to ask you, would these numbers apply to both counts you have not reached verdicts?

FOREMAN KESSLER: Yes.

THE COURT: Could you tell me, please, by simply saying two numbers, and I do not want to know how each group is divided, only by numbers. Could you tell me with two numbers how you are presently aligned?

FOREMAN KESSLER: 6–6.

THE COURT: 6–6, then, fine, you are making progress and you should continue your deliberations.

These questions were all asked by the judge at the jury room door. Counsel on behalf of the appellant did not object to the judge's questioning of the jury, at the jury room door, during its deliberations. Furthermore, when the jury requested to have the word "delivery" defined, the judge read only the instructions relating to delivery, rather than all the instructions, over the objection of appellant's counsel.

**15.** Because this Court must remand this case for a new trial, we do not address the other assignments of error raised by the appellant.

question about, and *if that's all you had count one would fly out the window* .... (emphasis added).

Quite clearly, those prior statements were admitted by the court for their impeachment value only. The record reflects that this was also abundantly clear to the defendant's attorney who during the same in camera hearing stated "[i]f we do not accept the prior statements as substantive evidence, there is then today an overwhelming amount of evidence that contradicts the testimony given by Steven P." Defense counsel could have requested a limiting instruction, but failed to do so.

In addition, the lower court did properly instruct the jury at the close of the evidence as to witness credibility and the nature of impeachment:

You are the sole judges of the credibility of the witnesses and the weight of the evidence. As used in these instructions, "the credibility of a witness" means the truthfulness or lack of truthfulness of the witness. "The weight of the evidence" means the extent to which you are or are not convinced by the evidence.

The number of witnesses testifying on one side or the other or an issue is not alone the test of the credibility of the witnesses and the weight of the evidence. If warranted by the evidence, you may believe one witness against a number of witnesses testifying differently. The tests are: How truthful is the witness and how convincing is his or her evidence in the light of all the evidence and circumstances shown.

In determining the credit and weight you will give to the testimony of any witness who has testified before you, you may consider, if found by you from the evidence: The good memory or lack of memory of the witness; the interest or lack of interest of the witness in the outcome of the trial; the demeanor and manner of testifying of the witness, the opportunity and means, or lack of opportunity and means, of having knowledge of the matters concerning which the witness testified; and the reasonableness or unreasonableness of such testimony.

From these considerations and all other conditions and circumstances appearing from the evidence, you may give to the testimony of the witness such credit and weight as you believe it entitled to receive.

If you believe that any witness in this case has knowingly testified falsely as to any material fact, you may, after considering and weighing the testimony of such witness, disregard the whole of the testimony of such witness or give it, or any part thereof, such weight and credit as you believe it to be entitled to receive.

The only additional commentary on this issue with regard to the instant case is that the prior statements here were not used sparingly, as they were in *Collins* and as the majority contends is required under *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975). However, as was pointed out in the *Collins* dissent, *Spadafore* dealt with a witness who claimed in court that he couldn't remember making the prior statement. Despite the fact that there was no inconsistent testimony in court, the Court in *Spadafore* seemed to go on to apply the concepts enunciated therein to all out-of-court statements. They swept too broad a brush if that case is now being used for the proposition that prior inconsistent statements cannot be used to fully impeach in-court testimony. As discussed in the *Collins* dissent, the modern trend is to broaden, not restrict, the use of out-of-court statements if the declarant is present and available for cross-examination.

### EVIDENCE SUPPORTING CONVICTIONS

When the majority claims that absent the prior statements there was no substantive evidence (except Steven P.'s) to support the jury's verdict, one wonders if the drafter of the opinion read the transcript.

Herewith is a summary of what the state established by direct testimony given *in court* by the witnesses:

Bill C. testified that the defendant was at the defendant's home with the boys on the night of the alleged offenses, and at that time the boys drank the defendant's liquor

and smoked marijuana, although in fairness Bill also testified (inconsistently with his prior statement) the defendant was in another room when the marijuana was smoked.

Orville R.'s direct in-court testimony also placed the defendant at the scene with the boys, indicated that the defendant provided them with alcohol, that the boys then took up a collection of funds with which the defendant went out to buy them beer, verified the presence and use of marijuana, and that Steve, Bill and the defendant smoked it together.

Michael S. testified in court that the defendant was at his home with the boys at the time of the alleged offenses. Michael also indicated that marijuana was smoked at that time, that two joints of marijuana were rolled and passed around, that the defendant handled the joints and puffed from the first one. Michael further testified that the defendant got a bottle of alcohol from the rear bedroom, brought it into the living room and provided it to the boys. He also testified that the defendant went out and got three cases of beer.

If this isn't direct, substantive evidence, what is? Real life isn't like "Perry Mason" where someone in the courtroom actually jumps up and confesses. This was solid, substantive evidence, especially when considered together with Steven P.'s testimony.

Perhaps the most vehement point of this dissent, however, is that even the majority acknowledges that Steven P. testified in court that the delivery was made to him by the defendant. That evidence was unrefuted and yet the conviction for delivery to Steven P. was also reversed.

All the majority seems to rely upon in reversing is that the cumulative effect of (1) a discussion the judge had with the juvenile witnesses out of the presence of the jury, (2) the use of prior inconsistent statements, and (3) the prosecutor's comments concerning the witnesses' credibility denied the appellant his constitutional right to a fair trial and constituted plain error.

Furthermore, Steven P. testified that, after receiving the marijuana from the defendant, he (Steven P.) handed it to Bill C. At the close of the state's evidence the court refused the defendant's motion for a directed verdict on the basis that this testimony of Steven P. alone would support a constructive delivery to Bill C.

## ACTIONS OF JUDGE AND PROSECUTOR

This was not a perfect trial. No trial ever is. But it is ludicrous to believe the prosecutor's comments and the judge's actions were a proper basis for overturning these convictions, especially the one relating to Steven P.

After the third youth took the stand and began to recant his earlier statement to police, the judge excused the jury and took the boys into chambers, on the record, whereupon he began to engage in a Dutch Uncle lecture. It is apparent that the judge was upset over the fact that there was so much changing of stories on the part of these young men. He lectured them on testifying truthfully, threatened an investigation, and concluded by ordering them "[b]oys, I expect—whatever the truth is, I want the truth." The judge did not suggest to them which version of their story he considered the truth. The jury heard none of this.

Now, had James resumed his testimony and recanted his recantation, one might reasonably conclude that the judge's little lecture improperly influenced the testimony. But the fact is that the judge's comments did not alter James' testimony in the least. In fact, James gave the least incriminating evidence of any of the boys.

While the lower court's lecture on truthtelling during the course of a witness' testimony may have been questionable, the record is clear that it did not affect the witness' testimony and the jury heard none of it. How the majority found that it in any way enhanced the prejudicial effect of the use of the prior statements is incomprehensible.

Lastly, the prosecutor's comments and argument weren't even made the subject of an assignment of error. Obviously, how-

ever, if a witness' in-court testimony is impeached by a prior inconsistent statement, the state has a right to attack the credibility and integrity of the testimony that was impeached. This Court permitted the prosecutor to call the defendant a liar in *State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990). Certainly it can't be more egregious to argue that an ordinary witness is lying than it is to call a criminal defendant a liar.

One suspects the bottom line of all this is that the majority thought the circuit court went a little too hard on this defendant, and decided to cut him a break. The judge did impose a rather stringent sentence—consecutive terms of one to five years each, an enhancement under West Virginia Code § 60A–4–406, fines of $30,000, along with a six-month sentence for the misdemeanor charge to be served concurrently, resulting in a cumulative sentence of four to twenty years. The harshness of the sentence was also raised as an assignment of error, but not dealt with by the majority.

As the state points out, however, "The Supreme Court of the United States, in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) and *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), has virtually proscribed review of any sentence length where the sentence is within the statutorily decreed range." It is also significant that this was a high school teacher and coach distributing drugs to minors. A more stringent sentence certainly is merited when one placed by society in a position of authority and influence as a teacher and role model for youth uses that position to encourage the use of drugs.

For the foregoing reasons, I dissent, and I am authorized to state that Justice BROTHERTON joins me in this dissent.