# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 18-1044** (Berkeley County 17-F-235)

**Billy Edward Evans,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Billy Edward Evans, by counsel Christian Riddell, appeals the sentencing order entered on October 19, 2018, in the Circuit Court of Berkeley County, that denied his post-trial motion for a new trial and sentenced him on his convictions of one count of attempted first-degree murder, six counts of malicious assault, and five counts of wanton endangerment with a firearm. The State of West Virginia, by counsel Andrea Nease Proper, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 24, 2017, petitioner was inside a Sheetz convenience store located in Martinsburg, West Virginia, waiting for a cab. While he was standing by the window, Renzel Danforth ("the victim") walked inside. The two men were strangers to each other.

What happened as and after the victim entered the store was highly contested at trial. Petitioner claims that the victim believed that he (petitioner) was admiring his own reflection in the store window and said, "N****rs think they're pretty. These West Virginia n****rs think they're pretty, but n****rs ain't as pretty as me . . . light skin is not in style no more." According to petitioner, the two men exchanged more words, causing petitioner to become angry at the victim's mannerisms and responses. Petitioner claims that, in an effort to de-escalate the situation, he went outside the store to continue waiting for his cab. As the victim exited the store, the victim said to petitioner, "Are you still here? You was talking a lot of s**t in there. I've got something for you. You stay right there. I've got a nice piece of steel for you." Petitioner claims that he believed, based upon the victim's comments, that he was going to retrieve either a knife or a gun from his car. Petitioner testified that he followed the victim to his car for the purpose of taking whatever it was that the victim was going to retrieve. Petitioner saw the victim reach under his

1

car's seat to grab the "piece of steel," at which point petitioner opened the victim's car door and reached for him in an effort to stop him. Petitioner testified that, although he was lawfully carrying a firearm, he had not drawn it and, in fact, could not have possibly done so because he had a cup of coffee in one hand while holding the handle on the victim's car door and reaching for the victim with the other hand.

According to petitioner, the victim retrieved a knife, got out of his car, and began stabbing at petitioner's head. Petitioner testified that although he was able to get a hold of the victim, he felt the victim puncture his body with the knife in various places, including his left shoulder, left arm, left hand and fingers, and penis. Petitioner testified that he felt his "adrenalines rushing" because he believed the victim was trying to kill him. Petitioner shot the victim six times and hit him in the head with the butt of his gun. Petitioner left the scene in a cab and was later apprehended by police.

The State's theory of the case differed significantly from petitioner's. The victim testified that he entered the store to purchase gas. While he was standing in line, he "looked through the window at my car and at myself and fixed my hair a bit . . . and then I saw [petitioner] staring at me, but I just turned around, because I just – to avoid looking at him." According to the victim, "I just faced the cashier and then [petitioner] began to question me and asking me if I'm all right. I didn't respond, and then I heard him say it again if I'm all right. I still didn't respond, and then he said 'because I have a gun and I will kill you now.'" In response, the victim tried to ignore him and "laugh[ed] it off." The victim paid for what he purchased, and walked outside. Petitioner then appeared to the victim's right and stated, "'that's your black car over there?'" According to the victim, petitioner "reached in his pants and right when he did that that's when I ran to my car." The victim then got into the driver's seat, looked behind him, and saw petitioner with his gun. The victim then reached under his seat and pulled out the knife he keeps there. He testified that he got out of the car to prevent his girlfriend, who was in the passenger's seat, from getting hurt. After petitioner shot the victim six times, the victim began stabbing at him in an effort to stop petitioner from shooting. Once petitioner ran out of ammunition, he began to hit the victim with the gun. The victim continued to stab petitioner, eventually fell to the ground, and was transported to the hospital.[1]

Among the witnesses who testified at trial was Victor Hajnos, the assistant manager at Sheetz who was working when the altercation between petitioner and the victim took place. Mr. Hajnos testified that he observed the two men arguing, but never heard the victim threaten petitioner. In contrast, he heard petitioner tell the victim that if he "came outside that he was going to mess him up." Mr. Hajnos testified that, when he rang the victim up at the counter, he "asked him if he was all right and that . . . I could call the cops because I felt like something was wrong and I offered that to him." Mr. Hajnos warned the victim not to go outside. After the victim left the store, Mr. Hajnos watched petitioner run after him. Mr. Hajnos hit the panic alarm to summon law enforcement. Based upon his observations, Mr. Hajnos believed petitioner to be the aggressor.

On August 31, 2017, petitioner was indicted by a Berkeley County Grand Jury on one count

---

[1] The victim was shot in the neck, collar bone, left shoulder, the right side of the chest, and in the groin. He also sustained a skull fracture and damage to his sinus cavity.

of attempted murder, six counts of malicious assault, and five counts of wanton endangerment.[2] He was convicted by a jury on all twelve counts of the indictment.

Petitioner filed a post-trial motion for a new trial. New counsel was appointed and a renewed motion was filed. Following a hearing, the circuit court denied petitioner's motion and sentenced him to three to five years in prison for his attempted murder conviction; two to ten years for each of the malicious assault convictions; and a determinate term of five years for each of the wanton endangerment with a firearm convictions. All of petitioner's sentences were ordered to run consecutively. This appeal followed.

In his first assignment of error, petitioner argues that the circuit court committed reversible error by refusing to grant his motion for a continuance of his criminal trial in order to discharge his trial counsel, whom petitioner believed was not competently representing him. Petitioner contends that, on the first day of trial, he articulated numerous legitimate reasons why his trial counsel was ineffective, including that counsel refused to listen to him, was not prepared to try the case, did not "pay attention" to discovery, and refused to write things down. As further grounds for a continuance, petitioner argued that, because his trial counsel could be called to testify in the failure to appear case, *see* n.2., counsel had a conflict of interest that required he be discharged from representing petitioner in the criminal matter at issue. According to petitioner, the circuit court should have granted his request for a continuance so that he could obtain new counsel, and its failure to do so was reversible error.

We review the circuit court's denial of petitioner's request for a continuance for abuse of discretion.

> "The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made." Syllabus point 1, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919).

Syl. Pt. 1, *State v. Dunn*, 237 W. Va. 155, 786 S.E.2d 174 (2016).

We first address petitioner's claim that his trial counsel had a conflict of interest that required his discharge from the present matter because counsel could be called as a witness in the failure to appear case. *See* Syl. Pt. 5, *Watson v. Black*, 161 W. Va. 46, 239 S.E.2d 664 (1977) (holding that court-appointed counsel may be relieved for good cause, including a conflict of interest). The record reveals that, at a March 5, 2018, pretrial hearing, trial counsel had moved to withdraw on this very ground—that is, that he might be called as a witness in the failure to appear case. The court advised petitioner that it had other counsel standing by in the courtroom to appoint,

---

[2] On January 16, 2018, petitioner failed to appear at a pre-trial hearing. As a result, he was subsequently indicted on the charge of failing to appear. Petitioner alleged that his trial counsel had advised him that he did not need to appear at the pre-trial hearing, a claim that counsel denied. Separate counsel was appointed to represent petitioner on that charge.

3

if necessary, but cautioned that "it's very likely he's not going to be able to get ready for your case within a month, which means that we might be setting your case out again." After trial counsel and petitioner conferred during a brief recess, petitioner agreed that trial counsel would continue to represent him on the present charges. Nonetheless, petitioner now argues, as he did in connection with his motion to continue, that, at the March 5th hearing, he did not understand that the trial would be continued if new counsel was appointed. Rather, petitioner claims, he agreed to continue with his trial counsel only because he believed that new counsel would not have adequate time to prepare for a trial that was scheduled to begin approximately one month later.

We find no error. "Whenever it is suggested to the trial court that an indigent criminal defendant is dissatisfied with his court-appointed counsel, the trial court should conduct a hearing on the record before trial to determine whether good cause exists to discharge a court-appointed counsel and appoint another." Syl. Pt. 3, *Watson*. It is clear that, at the March 5, 2018, hearing, the conflict of interest issue was raised and resolved to petitioner's satisfaction. Indeed, it was petitioner who determined that his trial counsel should continue to represent him in this criminal matter. Thus, we do not find that the circuit court abused its discretion in declining to revisit the issue and in denying petitioner's motion to continue his criminal trial based upon any conflict of interest.

We next address petitioner's claim that a continuance should have been granted because he believed that his trial counsel was not providing him with competent representation.

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pts. 5 and 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

We have cautioned that "'it is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal.'" *Id.* at 14, 459 S.E.2d at 125 (quoting *State v. Triplett,* 187 W.Va. 760, 771, 421 S.E.2d 511, 522 (1992)). "The very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. . . . Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies." *Id.* at 15, 459 S.E.2d at 126. Despite petitioner's efforts to characterize this alleged error as something other

than an ineffective assistance of counsel claim, it is clear that petitioner's argument is that his trial counsel's performance was objectively deficient. It is beyond cavil that "intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Id.* at 14-15, 459 S.E.2d at 125-26. *See also Tex S. v. Pszczolkowski*, 236 W. Va. 245, 254, 778 S.E.2d 694, 703 (2015) ("It is the need for the trial attorney's testimony that generally precludes this Court from reviewing any ineffective assistance of counsel claim on direct appeal."); *Miller,* 194 W. Va. at 17, 459 S.E.2d at 128 (stating that this Court "intelligently cannot determine the merits of this ineffective assistance claim without an adequate record giving trial counsel the courtesy of being able to explain his trial actions"). Thus, notwithstanding petitioner's stated desire that this Court consider, in this direct appeal of his convictions, whether his trial counsel provided competent representation, we decline to do so.

In his next assignment of error, petitioner argues that the circuit court erred in refusing his request for a self-defense instruction because the court determined that petitioner was the aggressor. He contends that there was a myriad of evidence that might reasonably cause a juror to believe that he acted in self-defense and that the circuit court improperly removed this factual issue from the jury as fact finder. Specifically, petitioner argues that the jury viewed the clothing he was wearing at the time of the incident and that it had "blood and cuts" on them; that the victim's claim that petitioner, a perfect stranger to him, threatened to kill him while in the check-out line at Sheetz was not credible; that the video footage from Sheetz did not show petitioner reaching into his pants for a gun as the victim claimed, or that the victim was running away from petitioner; and that petitioner had a cup of coffee in his hand when he approached the victim's car and, thus, it was impossible for petitioner to have had a gun in the other hand while also opening the victim's car door. Petitioner also points to witness testimony that corroborated his claim that he did not shoot the victim until the fight had already started. Finally, according to petitioner's own testimony, the victim told him that he was going to his car to get a "piece of steel," and that petitioner followed him there because he (petitioner) did not have a car and, if the victim had returned with a weapon, he could have harmed him and then driven away. We find no error.

> "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo.*" Syllabus Point 1, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996).

Syl. Pt. 1, *State v. Brooks*, 214 W. Va. 562, 591 S.E.2d 120 (2003).

"'The general rule is that a person accused of an assault does not lose his right to assert self-defense, *unless he said or did something calculated to induce an attack upon himself.*'" *Id.* at 567, 591 S.E.2d at 125 (quoting Syl., *State v. Smith*, 170 W. Va. 654, 295 S.E.2d 820 (1982) (emphasis added)). Further, this Court has instructed that "'one who is at fault *or who is the physical aggressor* can not [sic] rely on self-defense . . . .'" *State v. Knotts*, 187 W. Va. 795, 801, 421 S.E.2d 917, 923 (1992) (quoting *Smith*, 170 W. Va. at 656, 295 S.E.2d at 822 (emphasis added)). Indeed,

> "in general, the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation, unless he or she in good faith first

withdraws from the combat at a time and in a manner to let the other person know that he or she is withdrawing or intends to withdraw from further aggressive action." *State v. Riley,* 137 Wash.2d 904, 976 P.2d 624, 627 (1999) (citation omitted).

*Brooks* at 567, 591 S.E.2d at 125.

Petitioner's own testimony established that, after inflammatory words were allegedly exchanged between him and the victim—including that the victim threatened to get "a nice piece of steel" from his car—petitioner elected not to withdraw, seek help from others, or contact law enforcement. Instead, petitioner followed the victim from the store, into the parking lot, and to his car, where petitioner then shot him six times and hit him with the butt of his gun. As the circuit court determined, petitioner

> was, in fact, the aggressor. He's the one that elevated it up by charging at [the victim], grabbing him – grabbing [the victim] as he got into the car, and basically he provoked the very battle which resulted in [the victim] pulling a knife to protect himself and then responded by turning – whichever stage of the game, whether it was the gun that was brought out before or during the fight, I don't think that that makes a difference when the gun was brought out because of the fact that he charges at [the victim] while [the victim] was getting into his vehicle, not when [the victim] is getting out of his vehicle.

It is well settled that "'[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given.' Syllabus Point 4, *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971)." *Brooks*, 214 W. Va. at 564, 591 S.E.2d at 122, syl. pt. 5. *See also* Syl. Pt. 3, *State v. Shingleton*, 222 W. Va. 647, 671 S.E.2d 478 (2008). Based upon the evidence, we find that the circuit court did not abuse its discretion in denying petitioner's request for a self-defense jury instruction.

In his third assignment of error, petitioner argues that the prosecutor acted partially and unfairly in making inappropriate comments as to the mendacity of witnesses at trial. In particular, regarding the testimony of Mr. Hajnos, the Sheetz employee who testified that petitioner had been the verbal aggressor inside the store, the prosecutor asked petitioner if Mr. Hajnos's testimony was "untruthful" and if he was "a liar." Petitioner objected to the questioning on the ground that it invaded the province of the jury. However, the circuit court overruled the objection, ruling that "[i]t's cross-examination. [The prosecutor] wants to know if there's anything [petitioner] disagrees with." Petitioner also argues that the prosecutor unfairly questioned petitioner as to whether the arresting officer testified truthfully regarding his interactions with petitioner, improperly referenced petitioner's nickname of "Dollar," and made remarks about the mendacity of various witnesses and petitioner during closing arguments. On appeal, petitioner argues that the prosecutor violated his duty of fairness and impartiality and his quasi-judicial role by acting as a partisan and by asserting that petitioner was untruthful. *See State v. Moore*, 186 W. Va. 23, 409 S.E.2d 490 (1990).

As a threshold matter, we observe that petitioner made but one objection with regard to the mendacity of a witness (Mr. Hajnos) and then failed to make a continuing objection to this line of questioning. Nonetheless, petitioner argues that he adequately preserved the point for appellate review. *See State v. Kanney*, 169 W. Va. 764, 766, 289 S.E.2d 485, 487 (1982). Regardless, we do not find the questioning to be beyond the boundaries of allowable cross-examination. This Court has held that

> [i]t is not improper on cross-examination to direct a witness to specific previous testimony of another witness and ask the witness whether he agrees or disagrees with such testimony. It is objectionable on cross-examination to require a witness to state whether another witness' testimony is true or false, since this is the ultimate question that a jury must decide. However, the failure to sustain an objection to such improper question will not necessarily result in error, unless the technique has been used so pervasively and abusively in the cross-examination as to substantially distort the witness' testimony on critical trial issues.

Syl. Pt. 3, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979). Further, when cross-examination "point[s] to specific inconsistencies, rather than general credibility and where the examination did not substantially distort the witness' testimony, the use of comparative testimony techniques while undesirable, would not constitute reversible error." *State v. Kinney*, 169 W. Va. 217, 222, 286 S.E.2d 398, 401 (1982). Here, the State properly pointed out certain inconsistencies in petitioner's testimony as compared to the testimonies of Mr. Hajnos and the arresting officer. Accordingly, we do not find that the State pervasively and abusively cross-examined petitioner such that the questioning substantially distorted his testimony on critical trial issues.

Petitioner also argues that the State unfairly remarked during its closing argument that, "to believe [petitioner] you'd have to believe that almost everybody else . . . lied" and that "[t]he defendant's lying. . . . it's a BS story. . . . He is lying." Further, petitioner argues, the State referenced his nickname, "Dollar," stating, "His lawyer claimed at the beginning he was an innocent kid. I don't think Dollar is an innocent kid." The record reveals that petitioner failed to object to these remarks when made. We have instructed that "'[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks.' Syllabus Point 5, in part, *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987)." Syl. Pt. 10, *State v. Davis*, 205 W. Va. 569, 519 S.E.2d 852 (1999). Further, "'[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.' Syl. Pt. 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945)." Syl. Pt. 2, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016). Because petitioner failed to timely object to the prosecutorial remarks about which he now complains, this assignment of error is considered waived.

In his final assignment of error, petitioner argues that the circuit court erred in giving an *Allen* charge[3] to the jury after it advised the court that it was deadlocked on the attempted murder charge. During deliberations, a juror fell ill with a panic attack and was transported to the hospital during a lunch break. Within hours, she returned and deliberations resumed. Later the next day, the jury advised the circuit court that it was deadlocked at 11-1 on the attempted murder charge. The court, with the agreement of the parties, responded to the jury that the verdict must be unanimous. After the jury requested additional instruction, the circuit court—again, with the agreement of the parties—gave the following *Allen* charge:

> You have informed this Court of your inability to reach a verdict as to count one. At the outset[,] the Court wishes you to know that although you have a duty to reach a verdict, if that is not possible the Court has neither the power nor the desire to compel agreement upon the verdict.
>
> The purpose of these remarks is to point out to you the importance and the desirability of reaching a verdict in this case, provided however that you as individual jurors can do so without surrendering or sacrificing your conscientious scruples or personal convictions.
>
> You will recall that upon assuming your duties in this case each of you took an oath. The oath places upon each of you as individuals the responsibility of arriving at a true verdict upon the basis of your opinion and not merely upon acquiescence in the conclusions of your fellow jurors.
>
> However, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to reach a verdict by a comparison of views and by consideration of the proofs with your fellow jurors.
>
> During your deliberations, you should be open minded and consider the issues with proper deference to and respect for the opinions of each other, and you should not hesitate to reexamine your own views in the light of such discussions. You should consider also that this case must at some time be terminated, that you are selected in the same manner and from the same source from which any future jury must be selected, that there is no reason to suppose that the case will ever be submitted to 12 persons more intelligent, more impartial or competent to decide it, or that more or clearer evidence will ever be produced on one side or the other.

---

[3] "'The *Allen* charge, often called the "dynamite charge," is a supplemental instruction given to encourage deadlocked juries to reach agreement.' Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure,* Vol. II, page 257 (2nd Ed.1993)." *State v. Waldron*, 218 W. Va. 450, 459 n.11, 624 S.E.2d 887, 896 n.11 (2005), *writ denied sub nom. Waldron v. Scott* (2006), *aff'd sub nom. State ex rel. Waldron v. Scott*, 222 W. Va. 122, 663 S.E.2d 576 (2008). It originated from the case of *Allen v. United States,* 164 U.S. 492 (1896). *See Waldron*, 218 W. Va. at 459 n.11, 624 S.E.2d at 896 n.11.

You may retire now taking as much time as is necessary for further deliberations upon the issue submitted to you for determination. Thank you.

On appeal, petitioner concedes that he did not object to the giving of the *Allen* charge. This Court has cautioned that

> "[n]o party may assign as error the giving or the refusal to give an instruction or the giving of any portion of the charge unless that party objects thereto . . . but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction[.]" West Virginia Rules of Criminal Procedure, Rule 30. Further, where a party does not object to the giving of an Allen charge, he must show plain error in order to obtain a reversal of the conviction. *See United States v. Russell,* 971 F.2d 1098, 1107 (4th Cir.1992); *State v. Clark,* 175 W.Va. 58, 331 S.E.2d 496 (1985).

*Waldron*, 218 W. Va. at 459-60, 624 S.E.2d at 896-97. Petitioner argues that the giving of the *Allen* charge was plain error because it was improperly directed at the "hold-out juror," which, he contends, one can rationally infer was the juror who became ill. He argues that the *Allen* charge was intended to coerce the dissenting juror into abandoning her individually held view, acting against her conscience, and convicting petitioner on the charge of attempted murder "'not on the basis of evidence and the law, but on the basis of majority opinion.'" *Smalls v. Batista*, 6 F.Supp.2d 211, 220-21 (S.D.N.Y. 1998) (quoting *United States v. Beattie*, 613 F.2d 762, 764 (9th Cir. 1980)). *See also United States v. Robinson*, 560 F.2d 507 (2d Cir. 1997); *U.S. v. Ajiboye*, 961 F.2d 892 (9th Cir. 1992). We find no error.

First, petitioner fails to offer any factual support for his theory that the ill juror was also the "hold-out" juror on the attempted murder charge. Thus, this claim is purely speculative. Further, it is clear that the *Allen* charge at issue was in no way directed at the sole dissenter and, thus, coercive. Rather, the circuit court's instruction was not directed at either the minority or the majority, but, instead, encouraged the jury as a whole to reach a verdict. The court urged the jurors to compare their views, to be open-minded, and to consider and respect the opinions of each other. As in *State v. Hobbs,* 168 W.Va. 13, 37, 282 S.E.2d 258, 272 (1981), the "trial court's instructions in the instant case constituted a fair and reasonable effort to stimulate continued deliberation." In syllabus point 2 of *State v. Johnson,* 168 W.Va. 45, 282 S.E.2d 609 (1981), we held:

> Where a jury has reported that it is unable to agree and the trial court addresses the jury urging a verdict, but does not use language the effect of which would be to cause the minority to yield its views for the purpose of reaching a verdict, the trial court's remarks will not constitute reversible error.

9

Because the circuit court did not use language encouraging the minority to yield its views for the purpose of reaching a verdict, we find no error in the circuit court's decision to give the *Allen* charge in this case.[4]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[4] Petitioner mentions, in passing, that the circuit court failed to ask the ill juror whether, during her absence, she spoke with anyone about the case or saw media reports about it. Petitioner does not point to anywhere in the record where he requested this type of voir dire, nor did he raise the issue as an assignment of error in this appeal.